**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WESLEY I. MILLER,**

      **Defendant,**               **CASE NO. 2:09-CV-230**

                                     **JUDGE FROST**

**v.**                         **MAGISTRATE JUDGE ABEL**

**ED VOORHIES, WARDEN,**

      **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

      Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**FACTS and PROCEDURAL HISTORY**

      Petitioner Miller challenges criminal convictions in two separate criminal cases: *State of Ohio v. Wesley I. Miller,* Case No. 06-CR-107 (Washington Cty. C.P. Ct. (2006) and *State of Ohio v. Wesley Miller,* Case No. 06-CR-190 (Washington Cty. C.P. Ct. (2006). He pleaded guilty to some of the charges in Case No. 06-CR-107 ; and he went to trial and was found guilty of the charges in Case No. 06-CR-190 . The facts relating to each case will be set out separately below.

      <u>Case No. 06-CR-107</u>. On March 31, 2006, petitioner was indicted on by the Washington County grand jury in Case Number 06-CR-107, on five counts of breaking and

entering, in violation of O.R.C. §2911.13(A), ten counts of burglary, in violation of O.R.C. §2911.12(A)(3), eight counts of grand theft, in violation of O.R.C.§ 2913.02, two counts of safecracking, in violation of O.R.C. §2911.31(A), tampering with evidence, in violation of O.R.C. §2921.12, engaging in a patter of corrupt activity, in violation of O.R.C. §2923.32, and conspiracy to engage in a patter of corrupt activity, in violation of O.R.C. §2923.32 and §2923.01. *Exhibit 1 to Return of Writ.* On November 12, 2006, he pleaded guilty to three counts of breaking and entering, two counts of burglary, receiving stolen property, and conspiracy to engage in a pattern of corrupt activity. *Exhibits 3 and 4 to Return of Writ.* On November 29, 2006, the trial court sentenced him to an aggregate term of sixteen years incarceration. *Exhibit 5 to Return of Writ.* Petitioner filed a timely appeal in which he asserted that the trial court erred in failing to give him jail time credit, and in imposing non-minimum concurrent prison terms in violation of the Due Process and Ex Post Facto Clauses. *Exhibit 7 to Return of Writ.* On November 2, 2007, the Court of Appeals overruled petitioner's second assignment of error, sustained his first assignment of error, and remanded the case to the trial court to for determination of petitioner's jail time credit. *Exhibit 10 to Return of Writ.* On March 26, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *Exhibit 14 to Return of Writ.*

Case No. 06-CR-190. The Ohio Fourth District Court of Appeals summarized the facts and procedural history of petitioner's convictions in the Washington County Court of Common Pleas in Case Number 06-CR-190 as follows:

The Washington County Grand Jury indicted Miller for

2

burglary, theft, and safecracking. Miller entered not guilty pleas and filed a motion to suppress evidence seized from his car. The court denied the motion and the case proceeded to a jury trial.

At trial, the evidence showed that Miller and Autumn Miller, his wife, lived with Miller's grandparents. On the day in question, Miller and his wife were home and watched Miller's grandparents leave to go bowling in a league that included Tina Shrader and Ronald Smithberger. While Tina and Ronald ("the victims") were bowling, someone broke into their home and stole a lockbox that contained more than $1,700 in cash. The cash included $100 and $50 bills.

The investigation showed that Miller's wife knew one of the victim's daughters and had visited their home. After Miller's grandparents went bowling, someone placed a call from their home to the victims' home. During the burglary investigation, Miller's grandmother gave an officer two bags of new clothing that Miller or his wife brought to the home. Miller's grandmother told the officer that Miller and his wife were poor. She did not know how they could purchase the new clothing. She said that she and her husband had quit giving money to Miller and his wife.

After the burglary, witnesses saw Miller buying things with large bills. For example, he purchased things at Wal-Mart and paid for them with a $50 bill. He made three purchases at Finish Line, amounting to $100.51, $59.99, and $149.97. The clerk recalled that Miller paid the $149.97 purchase by giving her a $100 bill, a $50 bill, and a $20 bill. In addition, Miller paid off his wife's debt of $115. Miller had $175 in cash, including a $100 bill, when officers booked him into jail.

Over the objection of Miller, the state introduced evidence of other acts. First, for the purpose of showing motive, the state introduced evidence that Miller stole money from his employer's cash register several days before the charged burglary, theft, and safecracking. Miller told an officer that he stole the money to pay off his wife's debt. Second, for the purpose of showing identity, the state introduced evidence of

3

three other pending burglary charges against Miller. Through phone records, the state showed that Miller used his cell phone to call the victims' homes to seemingly find out if anyone was home.

Miller did not testify at trial. Miller's father provided the only alternate explanation as to why Miller had the cash after the burglary, theft, and safecracking; he testified that he had loaned Miller $200.

After closing arguments, the court gave the jury instructions regarding the law. As part of those instructions, the court stated, "Now, there was evidence about* * * other acts that Mr. Wesley Miller may have committed. I want to comment on that, before we go into the issues. Evidence was received about the commission of other acts of Mr. Miller that may constitute other crimes or wrongs. This evidence was received only for a limited purpose, and it may be considered by you only for the limited purposes provided for in the law. It was not received, and you may not consider it, to prove the character of Mr. Miller, in order to show that he acted in conformity with or in accordance with that character. If you find that the evidence of these other acts is true, and that Wesley Miller committed them, then you may consider that evidence only for the purpose of deciding whether it provides motive, preparation, plan, scheme, or system surrounding this offense or identity. The evidence of-of Mr. Wesley Miller's alleged acts at Go Mart is only offered by the State to prove motive. The evidence of Mr. Wesley Miller's alleged acts at the Rushing, Russell, and Nine residence[s], is only offered by the State to prove preparation or plan in this offense and the identity of the person who committed the offense in this case. This evidence cannot be considered for any other purpose."

The jury found Miller guilty of all three offenses, i .e., burglary, theft, and safecracking. The court sentenced Miller accordingly.

*State v. Miller*, 2007 WL 4465388 (Ohio App. 4th Dist. Dec. 18, 2007).  The trial court

sentenced petitioner to an aggregate term of five years incarceration. *Exhibit 22 to Return*

4

*of Writ.*  Petitioner filed a timely appeal, in which he raised the following assignments of error:

> I. The trial court erred by denying Mr. Miller's motion to suppress evidence seized from his car parked at his home without a warrant in violation of his rights under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 16, Article I of the Ohio Constitution.
>
> II. The trial court erred and deprived Mr. Miller of his right to a fair trial when it admitted unfairly prejudicial other acts evidence in violation of Ohio Evid.R. 404(B), 403(A), R.C. 2945.59, and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
>
> III. The trial court erred by imposing a non-minimum prison term in violation of the Due Process Clause of the Fourteenth Amendment [to the] United States Constitution.

*See id.*  On December 18, 2007, the appellate court affirmed the judgment of the trial court.  *Id.*  On May 21, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal.  *State v. Miller*, 118 Ohio St.3d 1409 (2008).

On March 25, 2009, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges both of his criminal cases in these proceedings and alleges that he is in the custody of the respondent in violation of the Constitution of the United States as follows:

> 1.  The severance remedy set fourth [sic] in *State v. Foster*, 109 Ohio St.3d 1 (2006), violated Petitioner's right to due process of law and the protection against Ex Post Facto law as guaranteed by the Due Process and Ex Post Facto Clauses of the United States Constitution.

5

2.  Petitioner was denied the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial and appellate counsel failed to raise meritorious challenges to Petitioner's sentence.

3.  Petitioner's right to be free from unreasonable search and seizure, as guaranteed by the Fourth, Fifth and Fourteenth Amendment to the United States Constitution, was violated when the trial court allowed the admission of evidence obtained in an illegal search of Petitioner's car.

4.  Petitioner's right to due process was violated when the trial court permitted the State to introduce evidence relating to other burglaries that Petitioner allegedly committed, violating Petitioner's right to Due Process of Law in violation of the fifth and Fourteenth Amendments to the United States Constitution.

It is the position of the respondent that petitioner's claims are procedurally defaulted, fail to present an issue appropriate for federal habeas corpus review or are without merit.

## CLAIMS ONE AND TWO

In claim one, petitioner asserts that he was denied due process and sentenced in violation of the Ex Post Facto Clause because the trial court sentenced him under the Ohio sentencing statutes as amended under *State v. Foster*, 109 Ohio St.3d at 1 (excising unconstitutional fact-finding provisions of Ohio's sentencing statutes under *Blakely v. Washington*, 542 U.S. 296).  In claim two, petitioner alleges he was denied the effective assistance of counsel when his trial and appellate counsel failed to raise meritorious challenges to his sentences. Respondent contends that claim one is procedurally defaulted because petitioner failed to raise the issue at sentencing in either of his criminal cases.

In recognition of the equal obligation of the state courts to protect the constitutional

rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

  In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must

demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

In Case Number 06-CR-107, the state appellate court reviewed petitioner's claim for plain error only due to his failure to object:

> Miller did not raise his due process and ex post facto arguments in the trial court. Miller received his sentence after *Blakely, supra*, which was decided on June 24, 2004. Thus, he has forfeited all but plain error. *State v. Payne*, 114 Ohio St.3d 502 . . . .

*Exhibit 10 to Return of Writ.* In Case Number 06-CR-190, the state appellate court likewise reviewed petitioner's claim for plain error only due to his failure to raise the issue at sentencing:

> Miller contends in his third assignment of error that the trial court erred by imposing a non-minimum sentence. He maintains that the sentence violates the Due Process Clause of the United States Constitution. Specifically, he claims that the "state court decision [i.e. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, which followed the reasoning in *Blakely v. Washington* (2004), 542 U.S. 296] deprived him of a statutory liberty interest when it removes procedural safeguards in a statute."

> Miller did not raise his due process argument in the trial court. He received his sentence after *Blakely, supra*, was decided on June 24, 2004. Thus, he has forfeited all but plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 31 ("we hold that a lack of an objection in the trial court forfeits the *Blakely* issue for purposes of appeal when the sentencing occurred after the announcement of *Blakely*.").

> Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights, although a defendant did not bring them to the attention of the court. The Supreme

Court of Ohio has found that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 2002-Ohio-68. *See Payne, supra.* First, an error must exist. *Id.*, citing *State v. Hill* (2001), 92 Ohio St.3d 191, 200, citing *United States v. Olano* (1993), 507 U.S. 725, 732 (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b] ). Second, the error must be plain, obvious, or clear. *Id.* (Citations omitted.) Third, the error must affect "substantial rights," which the court has interpreted to mean "but for the error, the outcome of the trial clearly would have been otherwise." *Id.* citing *Hill* at 205; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62; *State v. Long* (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.

"The burden of demonstrating plain error is on the party asserting it. (Cite omitted.) A reversal is warranted if the party can prove that the outcome 'would have been different absent the error.' " (Cite omitted.) *Payne* at ¶ 17. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long, supra,* at paragraph three of the syllabus.

In *State v. Grimes*, Washington App. No. 06CA17, 2006-Ohio-6360, this court considered and rejected a due process challenge to a sentence imposed in accordance with the Supreme Court of Ohio's holding in *Foster*. There, we agreed with the observations of the Ninth and Second Districts, which rejected such challenges outright. In doing so, those courts expressed that it is unlikely that the Supreme Court of Ohio would have directed lower level courts to violate the Constitution; and, in any event, the courts of appeal are bound by directives of the Supreme Court of Ohio. *Id.* at ¶ 8, citing *State v. Hildreth*, Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶ 10; *State v. Durbin*, Greene App. No.2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.

In finding that the Supreme Court of Ohio's remedy in *Foster* does not violate the Due Process Clause of the United States Constitution, we also expressed our approval of the reasoning

9

set forth by the Third District in *State v. McGhee*, Shelby App. No. 17-06-05, 2006-Ohio-5162. *Grimes* at ¶ 9, citing with approval *McGhee* at ¶¶ 11 & 13-20. Because the range of prison terms for the defendant's offense remained the same both before and after *Foster,* we concluded, "it is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." *Id.* at ¶ 10. Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Supreme Court of Ohio would strike down parts of R.C. 2929.14. *Id.* Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. *Id.* at ¶ 11.

Based upon our holding in *Grimes* (and numerous decisions following *Grimes* ), we find that the trial court did not err in imposing non-minimum sentences for Miller's offenses. See, also, *State v. Miller*, Auglaize App. No. 2-07-02, 2007-Ohio-4744 (Foster does not violate the Due Process Clause of the United States Constitution). We do not accept Miller's implied invitation to revisit these issues. Therefore, we do not find any error, let alone plain error.

*State v. Miller, supra.*

Therefore, petitioner has waived claim one for federal habeas corpus review.  A state appellate court's plain error review does not constitute a waiver of the state's procedural default rules.  *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000).

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir.2004), *cert. denied,* 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith,* 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee,*

> 2006 WL 328155 *12 (S.D.Ohio Feb.10, 2006).
>
> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst, v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw,* 484 F.Supp.2d 753, 771 (N.D. Ohio 2007).

Petitioner may still obtain federal habeas corpus review his procedurally defaulted claims if he establishes cause for his failure to follow state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

As cause for his procedural default, and in claim four of this habeas corpus petition, petitioner asserts the ineffective assistance of trial counsel; however, he failed to present this claim to the state appellate court.  Although he did raise a claim of ineffective assistance of trial counsel in the first instance on appeal to the Ohio Supreme Court in Case Number 06-CR-106, the Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below.  *See Mitts v. Bagley*, 2005 WL 2416929 (N.D. Ohio September 29, 2005) (habeas petitioner's failure to raise a claim in the Ohio Court of Appeals precludes review by the Supreme Court of Ohio), citing *Fornash v. Marshall,* 686 F.2d 1179, 1185 n. 7 (6th Cir.1982) (citing *State v. Phillips,* 27 Ohio St.2d 294, 302 (1971)).  Therefore,  the ineffective assistance of counsel cannot constitute cause for the procedural default of claim one.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

11

Petitioner did, however, assert the ineffective assistance of appellate counsel on appeal to the Ohio Supreme Court, at least in Case Number 06-CR-107.[1] *See Exhibit 12 to Return of Writ.* Presuming that he asserts this same claim as cause for his failure to raise on direct appeal a claim of ineffective assistance of trial counsel based on his attorney's failure to object at sentencing to imposition of his sentence(s) in violation of Due Process and the Ex Post Facto Clause, petitioner nonetheless cannot establish a constitutional violation under the test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). His claim that he was sentenced in violation of Due Process and the Ex Post Facto Clause is without any merit.

In *Hooks v. Sheets,* 603 F.3d 316 (6th Cir. April 27, 2010), the United States Court of Appeals for the Sixth Circuit rejected the argument now presented by petitioner, at least as it applies to imposition of consecutive terms of incarceration:

> The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides

---

[1] In *State v. Murnahan,* 63 Ohio St.3d 60 (1992), the Supreme Court of Ohio held that claims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals or in a direct appeal to the Supreme Court.

by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* ---U.S. ----, ---------, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)©. The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under

13

*Ice.* Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not do so.

*Id.,* at 320-21. Further, petitioner's argument has been repeatedly rejected by state and federal courts, including this Court. *Smith v. Brunsman,* 626 F.Supp.2d 786, 793-95 (S.D. Ohio 2009)(application of *Foster* violates neither the due process nor the ex post facto clauses).

Petitioner faced the same sentencing range both prior to and after *Foster.* The trial court's imposition of a non-minimum term of incarceration after *Foster* did not violate the Due Process or Ex Post Facto Clause. Therefore, petitioner cannot establish cause and prejudice for his procedural default. Further, upon review of the record, the Court does not deem this to be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333. for the same reasons, petitioner's second claim for relief–that his trial and appellate counsel were ineffective for failure to challenge his sentences–is also without merit.

14

### CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial because the trial court improperly denied his motion to suppress evidence seized by police in an allegedly illegal search of his car.  This claim is barred from review in these proceedings.  In *Stone v. Powell,* 428 U.S. 465, 481-82 (1976), the United States Supreme Court held: " where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Except under extremely limited circumstances, *Stone v. Powell* precludes habeas corpus review of alleged Fourth Amendment violations.

The Sixth Circuit has "set forth two distinct inquiries a court must perform when determining whether a petitioner may raise a claim of illegal arrest in a habeas action." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.2000) (citing *Riley v. Gray,* 674 F.2d 522 (6th Cir.1982)).

> First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* at 526.

*Machacek,* 213 F.3d at 952. *See also Harding v. Russell,* 156 Fed.Appx. 740, 745 (6th Cir.2005); *Crump v. LeCureux,* No. 92-1027, 974 F.2d 1338, 1992 WL 214521, at *3 (6th Cir. Sep. 3, 1992). The Sixth Circuit has held that Ohio, by providing for the filing of a

pretrial motion to suppress and the opportunity to take a direct appeal from any ruling

denying a motion to suppress, has in place a state procedural mechanism that presents

the opportunity for full and fair litigation of a Fourth Amendment claim. *Riley v. Gray,*

674 F.2d at 526; *see also Harding v. Russell,* 156 Fed.Appx. at 745; *Seymour v. Walker,* 224

F.3d 542, 553 (6th Cir.2000).  Further, the record fails to reflect that that presentation of

petitioner's Fourth Amendment claim was frustrated by any failure of Ohio's

procedural mechanism.  The trial court denied petitioner's pre-trial motion to suppress,

and petitioner was able to obtain review of that ruling on appeal.[2]

---

[2]  The state appellate court rejected petitioner's claim as follows:

Miller claims that the state needed a warrant before it could seize evidence
from his car. He maintains that the state violated his rights under the Fourth
Amendment of the United States Constitution when it searched his car and
seized his shoes. He asserts that the state used the shoes to match footprints
at the house. He concludes that the footprints were the only physical
evidence placing him at the home.

The Fourth Amendment of the Constitution of the United States and Section
14, Article I of the Ohio Constitution protect persons from unreasonable
searches and seizures conducted by the state. If a search or seizure is not
conducted pursuant to a judicial warrant, then it is unreasonable per se. *Katz
v. United States* (1967), 389 U.S. 347. A court must suppress evidence obtained
without a warrant in a criminal prosecution unless the state is able to
establish an exception to the warrant requirement. *Id.* at 357. The state
maintains that the automobile exception, inter alia, applies.

The automobile exception to the warrant requirement permits the
warrantless search of an automobile if the search is supported by probable
cause. *California v. Acevedo* (1991), 500 U.S. 565, 579-580; *United States v. Ross*
(1982), 456 U.S. 798, 824; *Mills,* supra, at 367. "Such probable cause must be
based upon objective facts that could justify the issuance of a search warrant
by a neutral and detached magistrate." *State v. Osborne* (April 21, 1997), Pike
App. No. 96CA584, citing *Chambers v. Maroney* (1975), 399 U.S. 42, 52.

Probable cause for a search is present when the totality of the circumstances make it fairly probable that particularly described evidence of a crime will be found. *Illinois v. Gates* (1983), 462 U.S. 213, 238. "Where police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents * * * that may logically conceal the object of the search." *State v. Welch* (1985), 18 Ohio St.3d 88, syllabus, citing *Ross,* supra. See, also, *Acevedo,* supra.

Here, we find that the officers had probable cause to search Miller's automobile. Miller and his wife lived with Miller's grandparents. Detective C.A. Brockmeier testified at the motion to suppress hearing as to the evidence the officers were aware of at the time they searched Miller's car, which was located on the grandparents' property. He outlined the following evidence:

(1) Miller and his wife saw Miller's grandparents leave their home to go bowling with the husband and wife victims;

(2) Miller's grandparents were bowling with the victims at the time they were burglarized;

(3) Miller's wife knew the victims and was familiar with their home;

(4) The state had already indicted Miller with more than 10 other burglaries, including homes where the people bowled with Miller's grandparents;

(5) Regarding the other indicted burglaries, officers found Miller in a car with a box full of stolen jewelry taken from those burglaries;

(6) Miller, along with his co-defendants, had bought new clothing with the proceeds from the other indicted burglaries;

(7) Miller's grandmother provided the officers with Miller's new clothing, along with a new shoe box, and stated that Miller did not have the money to buy the new clothing;

(8) The victims had over $1,700 in cash taken in the burglary. A couple of

17

Therefore, claim three fails to provide a basis for habeas corpus relief.

**CLAIM FOUR**

---

days after the burglary, Miller paid off a $115 check fee for his wife and paid for shopping items with a $50 bill;

(9) Officers saw another shoe box in Miller's car before the search;

(10) The victim wrote a statement to the officers and identified Miller as a suspect.

Therefore, after considering the totality of the circumstances and using an objective standard, we find that the officers had probable cause to search Miller's automobile for fruits of the crimes.

Miller contends, however, that it makes a difference that his car was on private property, not public property. He cites *Coolidge v. New Hampshire* (1971), 403 U.S. 443 in support.

After the Supreme Court of the United States found that an occupant of a car has a lesser expectation of privacy in his car than in his home, *California v. Carney* (1985), 471 U.S. 386, 391-392, it "has emphasized that no special exigency is required to conduct a warrantless search of an automobile when the car is mobile and the searching officer has probable cause to believe that fruits of a crime may be present in the automobile." *United States v. Graham* (C.A.6, 2001), 275 F.3d 490, 509-510, quoting *Maryland v. Dyson* (1999), 527 U.S. 465, 466. It no longer matters that the automobile is on private property instead of public property. *Id.* The touchstone is whether the vehicle is mobile.

Here, Miller's grandfather had just driven the car. Thus, it was mobile. Consequently, the car's presence on private property is immaterial.

Accordingly, we overrule Miller's first assignment of error.

*State v. Miller, supra.*

In claim four, petitioner asserts that he was denied a fair trial due to admission of evidence regarding prior bad acts.  The state appellate court rejected this claim as follows:

> Miller contends in his second assignment of error that the trial court erred during his trial when it allowed testimony of prior bad acts. Specifically, Miller claims that the court should not have allowed evidence of: (1) the theft of $100; and (2) the three other pending burglary charges.
>
> "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Dunham,* Scioto App. No. 04CA2931, 2005-Ohio-3642, ¶ 28, citing *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271; *State v. Hymore* (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. "A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably." *Dunham* at ¶ 28, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. "When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court." *Dunham* at ¶ 28, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169.
>
> Evid.R. 404(B) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, such evidence "may * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "Thus, while evidence of other crimes, wrongs or acts committed by the accused is not admissible to show that the accused has a propensity to commit crimes, it may be relevant to show: motive, intent, the absence of a mistake or accident, or a scheme, plan, or system in committing the act in question." *Dunham* at ¶ 29, citing *State v. Broom* (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. As such, "[w]hen other acts evidence is relevant for one of those limited

purposes, the court may properly admit it, even though the evidence may show or tend to show the commission of another crime by the accused." *Dunham* at ¶ 29, citing R.C. 2945.59. But otherwise admissible evidence must be excluded if the probative value of the evidence is outweighed by the danger of unfair prejudice. Evid.R. 403(A).

Here, the state introduced evidence of Miller's admission to an officer that he stole $100 in cash from his employer's cash register eight days before the current burglary because his wife had a bill to pay. The state introduced this evidence to show motive for the burglary, i.e., his wife's debt. In addition, the court gave the jury a limiting instruction. Under these circumstances, we find that the probative value of this evidence outweighs its prejudice. Therefore, we find that the trial court did not abuse its discretion when it admitted this "other act" evidence to show motive.

However, the state also introduced evidence of three prior pending burglaries to prove identity, an element of the charged burglary, theft, and safecracking offenses. The state claims that these prior bad acts show a scheme or *modus operandi,* which shows identity. "In order to be admissible for identity purposes, the similarity between the other acts and the charged offense, *i.e.,* their pattern and characteristics, must be so unusual and distinctive as to be like a signature. In sum, the conduct must be a 'behavioral fingerprint.' " *State v. Picklesimer* (Oct. 15, 1996), Pickaway App. No. 96CA2, citing *State v. Lowe* (1994), 69 Ohio St.3d 527, 531-532. [FN1]

FN1. *Lowe* also requires "substantial proof that the alleged other acts were committed by the defendant[.]" *Lowe* at 530. Here, however, Miller does not argue that he did not commit the other acts.

The state claims that Miller's act of calling the victims' homes to verify that no one was home just before committing the crimes constitutes the scheme or *modus operandi.* And, thus, this behavior identifies Miller as the culprit. We agree.

20

We find that this similarity between the other acts and the charged offense is so unusual as to be a "behavioral fingerprint." See *id.* We acknowledge that "[t]he mere repeated commission of crimes of the same class is insufficient to establish a behavioral fingerprint." *Id.* citing *Lowe.* Here, the "behavioral fingerprint" is not only the fact that someone called to make sure no one was home before burglarizing the homes, but also the fact that investigators traced all the phone calls made on the day of each burglary to phones Miller normally used, i.e., his cell phone or the phone where he lived.

In addition, the trial court gave a limiting instruction to the jury. Under these circumstances, we further find that the probative value of this evidence outweighs its prejudice. Therefore, we find that the trial court did not abuse its discretion when it admitted these "other acts" of burglaries into evidence.

Accordingly, we overrule Miller's second assignment of error.

*State v. Miller, supra.* The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was

contrary to or an unreasonable application of clearly established federal law, or based on

an unreasonable determination of the facts in light of the evidence that was presented. 28

U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a

21

person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner has failed to meet this standard here.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir.1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago,* 637 F.2d 449, 457 (6th Cir.1980). For the reasons addressed by the state appellate court, such were the circumstances here. Further,

[b]oth the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle,* 502 U.S. at 69-70; *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Coleman v. Mitchell,* 268 F.3d 417, 439-40 (6th Cir.2001); *Pennington v. Lazarof,* 13 Fed. Appx. 228, 232 (6th Cir.2001) ( *per curiam* ) (unpublished); *Manning v. Rose,* 507 F.2d 889, 893-95 (6th Cir.1974).

22

*Norris v. Davis,* unreported, 2006 WL 1581410 (E.D. Michigan May 3, 2006). Moreover,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire,* the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385. Moreover, in *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id.* at 563-64, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id.* at 564, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172, *117 S.Ct. 644, 136 L.Ed.2d 574 (1997)* ; *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly ... there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell,* 329 F.3d 469, 512-13 (6th Cir.2003). Therefore, claim four is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections

to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.


s/Mark R. Abel                          
United States Magistrate Judge